**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **PERCY LEE JONES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 02-CV-3059** |
| | ) | |
| **ALEX DAWSON, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION

On February 25, 2002, Petitioner, Percy Lee Jones, filed a pro se Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus (#1).[2] Astonishingly, this case is still open, though stayed, almost nine years later. This court concludes, based upon the applicable law from the United States Supreme Court, that continuing the stay in this case cannot be justified. This case is therefore dismissed without prejudice, with leave to reinstate if Petitioner ever manages to complete the exhaustion of his state law remedies.

## BACKGROUND

Petitioner is currently serving a term of imprisonment of 60 to 100 years based upon a 1977 conviction of murder, and other offenses, in DeWitt County. See People v. Jones, 379 N.E.2d 301 (Ill. App. Ct. 1978) (affirming Petitioner's DeWitt County convictions). Petitioner is also serving a term of imprisonment of 75 to 150 years based upon a 1977 murder conviction in Champaign County. See People v. Jones, 383 N.E.2d 239 (Ill. App. Ct. 1979) (affirming Petitioner's Champaign County conviction and sentence). Both murders occurred in February 1977 and were part of a crime

---

[1] Alex Dawson, the current Warden at the Logan Correctional Center, is substituted as the proper Respondent in this case.

[2] This court agrees with the Seventh Circuit that the Petition must be considered brought under 28 U.S.C. § 2254. Therefore, this court construes it as a § 2254 Petition.

spree which began in Chicago and ended in Peoria.  See Jones, 379 N.E.2d at 302-03; Jones, 383

N.E.2d at 240-41.  One murder victim was found dead in Clinton, Illinois, and the other murder

victim was found dead in Champaign, Illinois.  See Jones, 379 N.E.2d at 302; Jones, 383 N.E.2d at

240.

As noted, Petitioner filed his habeas Petition (#1) in February 2002.  On March 28, 2002, the

case was assigned to United States District Judge Jeanne E. Scott.  On April 19, 2002, Judge Scott

entered an Order (#14) and dismissed the Petition.  Judge Scott determined that Petitioner had

previously filed a Petition under 28 U.S.C. § 2254, which was dismissed by United  States District

Judge Joe Billy McDade on April 27, 2001.  Judge Scott therefore found that Petitioner's Petition

was a second or successive habeas petition so Petitioner was required to obtain authorization from

the Seventh Circuit Court of Appeals before filing the petition.  Petitioner appealed from the

dismissal of his Petition.

On October 7, 2002, the Seventh Circuit Court of Appeals issued its Mandate (#29) and

remanded the case for further proceedings.  In its Order, the Seventh Circuit stated that, because

Petitioner is a state prisoner, his current collateral attack necessarily arose under 28 U.S.C. § 2254.

The court then determined that the district court improperly found that the current petition was

second or successive.  The court noted that Petitioner had filed a habeas petition in December 2000

which was dismissed by the district court as time-barred or, alternatively, for failure to exhaust state-

court remedies.  The court stated that this earlier petition did not challenge his convictions and

sentences but rather challenged the procedures used to determine his parole eligibility.  The court

determined that this claim did not arise under § 2254 but should have been brought under 42 U.S.C.

§ 1983.  The court then stated that Petitioner's current petition challenged his convictions and

sentences but also attacked the parole eligibility procedures.  The court went on to state:

One resolution of the case, and perhaps the most efficient, would be to simply deny a certificate of appealability on the ground that Jones's claims are meritless. His *Apprendi* argument is patently frivolous–he seems to argue that his indictment should have alleged that his crimes were "particularly brutal and vicious"–and *Apprendi*, in any event, is not retroactive. *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002). And Jones's ineffective assistance claim is plainly untimely. But we cannot decide the underlying merits of a habeas corpus petition where, as here, the district court erroneously believed that it lacked jurisdiction. *See Potts v. United States*, 210 F.3d 770, 770 (7th Cir. 2000) ("The essential point is that a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits" of his collateral attack.); *Shepeck v. United States*, 150 F.3d 800, 801 (7th Cir. 1998) (a prisoner "is entitled to prosecute one collateral attack on the judgment.")

The Seventh Circuit vacated the district court's judgment and remanded the case "with instructions to dismiss the claim attacking the parole procedures as improperly brought under § 2254, and for further proceedings on the remaining claims."

Following the Seventh Circuit's Order, the case was reopened. Petitioner filed a Motion to stay or hold proceedings in abeyance (#27). Petitioner asked that the case be stayed while he presented his claims to the state court. On December 27, 2002, Petitioner filed a Motion Requesting § 2254 Petition to be Dismissed without Prejudice (#32). Petitioner stated that he was in the process of exhausting his state court remedies and asked that his petition be dismissed without prejudice so

3

that he could refile it after the state court remedies were completed. On March 11, 2003, Judge Scott, by minute entry, denied Petitioner's Motion to Dismiss. Judge Scott stated, with no explanation, that "[i]f the Court dismissed Petitioner's case, he will be unable to refile it." Judge Scott then granted Petitioner's Motion to Stay. Judge Scott stated, "Petitioner is directed to inform the Court within fourteen (14) days after the adjudication of Petitioner's claims in state court, and set out any amendments to his Petition at that time."

On January 13, 2005, Petitioner filed a document (#35) which set out the status of his proceedings in state court. Beginning in 2006, both Petitioner and Respondent provided status reports to the court.[3] On January 4, 2007, Respondent filed a Status Report (#40) which stated that Petitioner's case in DeWitt County remained ongoing. Respondent attached a copy of the DeWitt County docket report which showed that, on June 28, 2005, the Illinois Appellate Court allowed Petitioner's motion to remand his post-conviction petition for further proceedings under the Illinois Post-Conviction Act. Respondent stated that Petitioner was allowed until January 24, 2007, to file an amended post-conviction petition. Respondent stated that Petitioner's case remained ongoing in state court and the district court should continue to stay the proceedings.

On June 21, 2007, Respondent filed another Status Report (#42). Respondent stated that the circuit court of DeWitt County dismissed Petitioner's pro se post-conviction petition on May 16, 2007. Petitioner further stated that Petitioner filed a notice of appeal and the case was pending before the Fourth District Appellate Court. Respondent stated that the case remained ongoing in state court and the stay should continue. Respondent filed additional Status Reports on January 10,

---

[3] Although both Petitioner and Respondent have filed status reports, this court will, for the most part, set out only the substance of the status reports filed by Respondent. Respondent's status reports are easier to decipher and appear to be consistent with the information contained in Petitioner's status reports.

2008, and September 18, 2008.  Both Status Reports (#44, #47) just stated that the state court proceedings remained ongoing.  On May 28, 2009, Respondent filed another Status Report (#50). Respondent stated that he called the circuit clerk of DeWitt County and was told that Petitioner's state proceedings remained ongoing.  Respondent stated that the clerk reported that, on February 5, 2008, the Appellate Court reversed the dismissal of Petitioner's post-conviction petition on timeliness grounds and remanded the case to the circuit court of DeWitt County for further proceedings.  Respondent recommended that the case remain stayed.  Additional Status Reports were filed by Respondent on December 18, 2009 (#52), and June 17, 2010 (#54).  Both Status Reports stated that the case remained ongoing and the last docket entry in the DeWitt County circuit court was the Illinois Appellate Court's order of February 5, 2008.

On July 29, 2010, this case was reassigned to this court due to the retirement of Judge Scott. On December 10, 2010, Respondent filed a Status Report (#56).  Respondent again stated that Petitioner's post-conviction proceedings in DeWitt County remained active and the last docket entry was the Illinois Appellate Court order of February 5, 2008.  Petitioner filed a Status Report (#57) on December 21, 2010.  Petitioner essentially restated the information provided by Respondent and asked this court to continue to stay the proceedings.  Notably, Petitioner provided no information regarding any efforts he had made to achieve the resolution of his post-conviction petition which was remanded to the DeWitt County circuit court on February 5, 2008.  On December 28, 2010, this court entered a text order and stated, "[t]he Court has reviewed the status reports of the parties, 56 and 57, and agrees that the case should remain stayed because the state court claims remain pending."  This court now concludes that its text order was improvidently entered.

5

ANALYSIS

On March 30, 2005, approximately two years after Judge Scott stayed this case in her minute

entry dated March 11, 2003, the United States Supreme Court decided Rhines v. Weber, 544 U.S.

269 (2005).  In Rhines, the Court confronted a situation where the habeas petitioner had filed a

"mixed" habeas petition which included some claims which had been fully exhausted in the state

courts and some claims which had not been exhausted.  Rhines, 544 U.S. at 272.  The Court noted

that, at the time the district court determined that 8 of the 35 claims in the petition had not been

exhausted, the one-year statute of limitations under the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) had run.  Rhines, 544 U.S. at 272.  The Court stated that, if the district court

had dismissed the petition at that point, the petitioner would have been unable to refile in federal

court after exhausting the unexhausted claims.  Rhines, 544 U.S. at 272-73.  The district court

therefore issued a stay conditioned upon the petitioner commencing state court exhaustion

proceedings within 60 days of the order and returning to the district court within 60 days of

completing the exhaustion.  Rhines, 544 U.S. at 273.  The Eighth Circuit Court of Appeals reversed,

concluding that "stay and abeyance is always impermissible."  Rhines, 544 U.S. at 279.

The Court concluded that stay and abeyance was permissible, under certain limited

circumstances, and remanded the case to the Eighth Circuit for a determination whether the district

court abused its discretion in issuing the stay.  Rhines, 544 U.S. at 279.  In reaching its conclusion,

the Court in Rhines made some observations which are very instructive in this case.  The Court

noted that one of the purposes of the AEDPA is to "reduce delays in the execution of state and

federal criminal sentences."  Rhines, 544 U.S. at 276, quoting Woodford v. Garceau, 538 U.S. 202,

206 (2003).  Therefore, the AEDPA "reduces the potential for delay on the road to finality by

restricting the time that a prospective federal habeas prisoner has in which to seek federal habeas

6

review." Rhines, 544 U.S. at 276, quoting Duncan v. Walker, 533 U.S. 167, 179 (2001). The Court

further noted that Congress enacted the AEDPA against the backdrop of the total exhaustion

requirement and included a tolling provision to encourage petitioners to seek relief in the state courts

in the first instance before bringing claims to federal court. Rhines, 544 U.S. at 276-77. The Court

stated:

> Stay and abeyance, if employed too frequently, has the
> potential to undermine these twin purposes. Staying a federal habeas
> petition frustrates AEDPA's objective of encouraging finality by
> allowing a petitioner to delay the resolution of the federal
> proceedings. It also undermines AEDPA's goal of streamlining
> federal proceedings by decreasing a petitioner's incentive to exhaust
> all his claims in state court prior to filing has federal petition. Cf.
> *Duncan, [*533 U.S. at 180] ("[D]iminution of statutory incentives to
> proceed first in state court would . . . increase the risk of the very
> piecemeal litigation that the exhaustion requirement is designed to
> reduce").
>
> For these reasons, stay and abeyance should be available only
> in limited circumstances. Because granting a stay effectively excuses
> a petitioner's failure to present his claims first to the state courts, stay
> and abeyance is only appropriate when the district court determines
> there was good cause for the petitioner's failure to exhaust his claims
> first in state court. Moreover, even if a petitioner had good cause for
> that failure, the district court would abuse its discretion if it were to

grant him a stay when his unexhausted claims are plainly meritless.
Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas
corpus may be denied on the merits, notwithstanding the failure of
the applicant to exhaust the remedies available in the courts of the
State").

Even where stay and abeyance is appropriate, the district
court's discretion in structuring the stay is limited by the timeliness
concerns reflected in AEDPA. A mixed petition should not be stayed
indefinitely. . . . Without time limits, petitioners could frustrate
AEDPA's goal of finality by dragging out indefinitely their federal
habeas review. Thus, district courts should place reasonable time
limits on a petitioner's trip to state court and back.

Rhines, 544 U.S. at 277-78 (emphasis added).

This court must conclude that the almost eight-year stay in this case, with no end in sight,
cannot be what the Supreme Court in Rhines envisioned as an appropriate use of the stay and
abeyance procedure. First of all, there was no finding that there was good cause for Petitioner's
failure to exhaust his claims in state court prior to filing his habeas petition. This court notes that
the record does not reflect any basis for such a finding. This court is skeptical of Petitioner's
diligence in pursuing his claims, especially in light of his complete failure to obtain a ruling in the
DeWitt County circuit court for almost three years. According to the status reports filed in this case,
nothing has been done since Petitioner's pro se post-conviction petition was remanded to the DeWitt
County circuit court on February 25, 2008, and Petitioner has provided no information regarding any
efforts he has made to bring the proceedings to completion.

8

Second, based upon the Seventh Circuit's 2002 Order, there is every reason to believe that Petitioner's claims lack merit. There is no reason for a stay when the unexhausted claims are plainly meritless. This court concludes that this case does not present the "limited circumstances" where the stay and abeyance procedure is appropriate. Moreover, no reasonable time limits were placed on the stay, with fairly disastrous results.

This court recognizes that Judge Scott did not have the benefit of the Rhines decision when she ordered the case stayed on March 11, 2003. This court concludes, however, that the stay in this case cannot continue based on Rhines. This court concludes that this case has already been stayed years too long and there is no reason to continue the stay into perpetuity. This court concludes that the proper way to handle this case at this point is to dismiss it without prejudice, pending the completion of the state court proceedings. See Gavin v. Wright, 2007 WL 1544177, at *3 (C.D. Ill. 2007); O'Connor v. Firkus, 2007 WL 522025, at *4-5 (C.D. Ill. 2007).

IT IS THEREFORE ORDERED THAT:

(1) The clerk is directed to substitute Alex Dawson, the current Warden at the Logan Correctional Center, as the proper Respondent in this case.

(2) Petitioner's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is dismissed without prejudice, with leave to refile after the conclusion of the state court proceedings.

(3) This case is terminated.

ENTERED this 23rd day of February, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE